

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2004

# USA v. Fuentes

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3215

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Fuentes" (2004). *2004 Decisions.* Paper 672.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/672

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3215
_____

UNITED STATES OF AMERICA

v.

CESAR FUENTES,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cr-00806)
District Judge:  The Honorable Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
May 27, 2004

Before:  SCIRICA, Chief Judge, FISHER and ALARCÓN,[*] Circuit Judges.

(Filed:  May 28, 2004)
_____

OPINION OF THE COURT
_____

---

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

FISHER, <u>Circuit</u> <u>Judge</u>.

Cesar Fuentes appeals from the district court's refusal to compel the government to execute its contractual agreement to move for a downward departure. The government refused to move for a downward departure following its determination that Fuentes committed crimes in breach of cooperation agreements he had entered into with the government. We conclude that the government's determination that Fuentes committed crimes in breach of the agreements was made in good faith, and we therefore affirm the judgment of the district court.

I.

On October 29, 2002, Fuentes pled guilty to charges of conspiring to commit mail fraud. In connection with his guilty plea, Fuentes entered into two cooperation agreements, one with the United States Attorney's Office for the District of New Jersey (the New Jersey Agreement) and one with the United States Attorney's Office for the Eastern District of New York (the New York Agreement) (the Agreements). The Agreements both required the government to move for a downward departure in the event Fuentes fully complied with his obligations, including the obligation not to commit or attempt to commit any further crimes. The Agreements expressly provided that were Fuentes to commit any crimes, the government would be released from its contractual obligation to move for a downward departure. The New Jersey Agreement conferred "sole discretion" to the government in determining whether Fuentes complied with the

2

Agreement; the New York Agreement required only that the government's determination as to Fuentes's compliance be undertaken in "good faith."

On March 8, 2003, prior to Fuentes's sentencing hearing, New Jersey law enforcement authorities arrested and charged Fuentes with kidnapping, robbery and assault. On May 1, 2003, after informing Fuentes's counsel that the government would not move for a downward departure because Fuentes had breached the Agreements by committing other crimes, a government attorney met with Fuentes to hear his version of events. Finding Fuentes's version lacking in credibility and inconsistent with the evidence obtained by state investigators, the government reaffirmed its position that Fuentes had breached the Agreements and that it consequently would not move for a downward departure. Fuentes moved to compel the government to file a downward departure motion. The district court considered the motion at Fuentes's sentencing hearing on July 7, 2003, and denied it.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Fuentes asserts that the government's refusal to move for a downward departure constituted a breach of the Agreements entitling him to relief. The government counters that it only decided not to move for a downward departure once it determined that Fuentes had breached the Agreements by committing crimes, a breach that, under the plain terms of the Agreements, released the government from its obligation to so move. Fuentes

3

contests the government's view that he breached the Agreements by committing a crime, arguing that the government's determination was "unilateral[ ] and premature" and could not support a conclusion that Fuentes breached the Agreements unless and until he has a "meaningful opportunity" to defend himself against the charges. Indeed, Fuentes goes further, arguing that the government cannot determine that he has committed a crime in violation of the Agreements until a jury decides beyond a reasonable doubt that he has.

Fuentes's contentions are meritless. We have made plain that "[w]hen there is an agreement, the district court may interpret the agreement according to contract principles and consider whether the government has acted in good faith in choosing not to move for the downward departure." United States v. Swint, 223 F.3d 249, 253 n. 5 (3d Cir. 2000) (citation omitted). "Presumably, a district court may also determine whether the government has acted with an unconstitutional motive in this circumstance." Swint, 223 F.3d at 253 n. 5. Thus, the government need not prove a defendant's breach of a plea agreement by any measure of evidence, but must only act without unconstitutional motive and in good faith.

Fuentes nowhere argues that the government acted with unconstitutional motive. Thus, we examine the record only for evidence that the government acted in bad faith.[1]

---

[1]We note that Fuentes did not expressly argue that the government acted in bad faith before the district court, nor has he done so to this Court. Nonetheless, we will consider his argument concerning weaknesses in the evidence supporting the charges against him as one challenging the good faith of the government's determination that he committed the crimes with which he has been charged.

4

We have not often analyzed "good faith" in the plea agreement context. In United States v. Isaac, 141 F.3d 477 (3d Cir. 1998), reviewing the government's determination that the defendant had breached a cooperation agreement by failing to provide substantial assistance, we said that "good faith" required only "that the government's position be based on an honest evaluation of the assistance provided and not on considerations extraneous to that assistance." Isaac, 141 F.3d at 484.

The government contends that it acted in good faith in reaching its conclusion that defendant committed crimes because it (1) discussed the offenses with the county prosecutor's office; (2) gave Fuentes two opportunities to present his version of events; and (3) evaluated Fuentes's story against the evidence presented by the state prosecutor. The government also argues that its determination is supported by the Operations Report from the Lawrence Township Police Department, as well as the statements of the alleged kidnapping victim (Jose Morales), who identified one of the perpetrators as "Cesar" and provided a photo identification of Fuentes as one of his assailants.

This is sufficient to establish "good faith." Indeed, at least one of our sister circuits has held that the mere existence of criminal charges is sufficient to support a good faith determination that a defendant has committed crimes for purposes of a cooperation agreement. See United States v. Gregory, 245 F.3d 160, 164 (2d Cir. 2001) (holding that "charges filed against Gregory provided a good faith basis for the Government to determine that he had breached his obligation not to commit any further crimes.")

(citation omitted). Fuentes's contentions about the evidence supporting the charges against him, even if valid, do not establish that the government acted in bad faith in finding that he committed the crimes for purposes of the Agreements.

Accordingly, we will affirm the judgment of the district court.

_____